John P. Schnurer, Bar No. 185725
JSchnurer@perkinscoie.com
John D. Esterhay, Bar No. 282330
JEsterhay@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130-2080
Telephone: 858.720.5700
Facsimile: 858.720.5799

Craig W. Trepanier
(*Pro Hac Vice* to be Filed)
craig@trepanierlaw.com
8000 Flour Exchange Building
310 Fourth Avenue South
Minneapolis, MN 55415
Telephone: 612.455.0502
Facsimile: 612.455.0501

Attorneys for Plaintiff
Monolithic Power Systems, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation;<br><br>Plaintiff,<br><br>v.<br><br>MEL FOSTER COMPANY INC., a Minnesota corporation<br><br>Defendant. | Case No. 5:23-cv-04455<br><br>**COMPLAINT** |

Plaintiff Monolithic Power Systems, Inc. (**"MPS"** or **"Plaintiff"**), as and for its Complaint against Defendant Mel Foster Company Inc. (**"Mel Foster"** or **"Defendant"**), states and alleges as follows:

## THE PARTIES

1. Plaintiff is a corporation organized and existing under the laws of Delaware, with its principal place of business and headquarters at 5808 Lake Washington Boulevard NE, Kirkland, Washington 98033, and with a significant portion of its operations including management of sales operations in this judicial district, at 79 Great Oaks Blvd, San Jose, California 95119. Plaintiff is properly registered with the California Secretary of State to conduct business in the State of California. Plaintiff designs, manufactures, and sells integrated semiconductor circuits.

2. Upon information and belief, Defendant is a Minnesota corporation with its principal place of business at 5850 Opus Parkway, Suite 120, Minnetonka, Minnesota 55343. Upon information and belief, Defendant is an independent manufacturer's sales representative that solicits orders of products, such as those sold by Plaintiff, in various territories.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Plaintiff's related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

4. This Court also independently has subject matter jurisdiction under 28 U.S.C. § 1332 because complete diversity exists between the parties. Plaintiff is a citizen of the State of Delaware (where it is incorporated) and the State of Washington (where it maintains its principal place of business) and Plaintiff has substantial business operations in this District. Defendant is a citizen of the State of Minnesota (where it is incorporated and maintains its principal place of business). The matter in controversy for Plaintiff's claims exceeds, exclusive of interest and costs, the sum of $75,000.00.

5. This Court has personal jurisdiction over Defendant because: (a) the contracts at issue were entered into in Santa Clara County, State of California; (b) Plaintiff's claims involve

1  causes of action that arose in this District; (c) Defendant agreed in the parties' written contract to submit to the personal jurisdiction of the state and federal courts in Santa Clara County, California; and (d) Defendant has otherwise made or established contacts within the State of California sufficient to permit the exercise of personal jurisdiction.

6. The United States District Court for the Northern District of California is a proper venue pursuant to 28 U.S.C. § 1391(b)(2) because: (a) Defendant agreed in the parties' written contract at issue that any litigation regarding the interpretation, breach or enforcement of the parties' agreement shall be filed in and heard by the state or federal courts with jurisdiction to hear such disputes in Santa Clara County, California; (b) Defendant agreed in the parties' written contract to submit to the personal jurisdiction of the state or federal courts in Santa Clara County, California; and (c) a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this District.

7. Injunctive relief is sought pursuant to Fed. R. Civ. P. 65 and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 *et seq*.

**FACTUAL ALLEGATIONS**
**The Parties' Contractual Relationship**

8. On or about January 25, 2008, Plaintiff retained Defendant as its sales representative to solicit orders of Plaintiff's products in certain designated territories pursuant to an Independent Sales Representative Agreement.

9. Thereafter, the parties entered into subsequent Independent Sales Representative Agreements in 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, and 2022. Most recently, MPS and Mel Foster entered into an Independent Sales Representative Agreement effective January 1, 2022 (the **"Agreement"**). A true and correct copy of the Agreement is attached as Exhibit 1 and incorporated herein by reference.

10. In the Agreement, Plaintiff appointed Defendant as its independent manufacturer's sales representative to solicit orders of Plaintiff's products in Minnesota, North Dakota, South

Dakota, and Western Wisconsin, in exchange for a commission, and Defendant accepted such appointment pursuant to the terms and conditions set forth in the Agreement.

11. Section 10.2 of the Agreement provides that:

> Representative or MPS may terminate this Agreement, at any time during the term of this Agreement with or without cause, by written notice given to the other party not less than thirty (30) days prior to the effective date of such termination; provided that in the event of any material breach of this Agreement, the non-breaching party may terminate this Agreement with immediate effect.

<u>Exhibit 1</u>, Agreement § 10.2.

12. Section 11.3 of the Agreement provides that:

> This Agreement shall be governed by and construed in accordance with the laws of the State of California, USA (except that body of laws controlling conflicts of law). Representative agrees that any litigation regarding the interpretation, breach or enforcement of this Agreement shall be filed in and heard by the state or federal courts with jurisdiction to hear such disputes in Santa Clara County, California, and Representative hereby submits to the personal jurisdiction of such courts.

<u>Exhibit 1</u>, Agreement § 11.3.

13. Mel Foster is a sophisticated party that signed the Agreement knowingly and voluntarily. Mel Foster signed thirteen (13) separate contracts with MPS going back to 2008, all of which provided that either party could terminate the relationship, at will, upon at least thirty (30) days' written notice, and all of which dictated California law would apply.

14. Mel Foster operated and received benefits under the parties' agreements.

15. MPS detrimentally relied upon Mel Foster's promises, as set forth in the agreements, and its belief that Mel Foster intended to honor the agreements, as drafted.

16. Upon information and belief, Defendant had no intention of honoring the provision permitting Plaintiff to terminate the Agreement upon thirty (30) days' notice or litigating all disputes in California.

17. Defendant, through its false pretenses and misrepresentations, wrongfully induced Plaintiff to sign the contracts between the parties.

-4-

COMPLAINT
CASE NO. 5:23-CV-04455

### The Parties' Connections to California

18. Mel Foster deliberately and intentionally entered into a sustained, continuous, and long-term contractual and business relationship with MPS in the State of California.

19. When the parties entered into their first agreement in 2008, MPS's principal place of business was located in San Jose, California.

20. The parties' agreements were negotiated by the parties, in part, within the State of California.

21. A substantial amount of performance of the parties' contracts was contemplated to occur in the State of California, from where MPS's sales operations are managed.

22. The parties included a California choice-of-law provision in each of their contracts.

23. The parties included a California exclusive forum selection clause in each of their contracts.

24. MPS maintains a substantial facility in San Jose, California, where hundreds of employees work, performing engineering, sales, customer service, legal, and other important functions related to the sales Mel Foster was retained to solicit. Over the years, the bulk of MPS's sales activities (and management of those activities) took place out of the San Jose, California office.

25. Mel Foster routinely interacted with MPS personnel in California and directed its activities towards the State of California, including:(a) sending e-mails, customer orders, communications, and documents to California with respect to customer service matters, expediting orders, and inquiring regarding the status of orders; (b) initiating and answering phone calls with MPS personnel in California; and (c) initiating and participating in video conferences with MPS personnel in California, including monthly technical training sessions hosted in California.

**Mel Foster's Breach of the Agreement**

26. Plaintiff reassessed the parties' relationship after Mel Foster materially breached the terms of the Agreement and failed to meet reasonable sales goals.

27. Mel Foster materially breached Section 2.1(i) of the Agreement by (a) not using its best efforts to vigorously and aggressively solicit orders for MPS Products within the Territory and failing to meet sales growth goals; (b) failing to conduct a minimum of 30 customer visits with MPSnow (MPS' virtual sales network) per month, as required by Exhibit F; (c) failing to conduct a minimum of 1 distribution training per quarter, as required by Exhibit F; and (e) failing to conduct 2 formal business reviews annually, as required by Exhibit F.

28. Upon information and belief, Mel Foster materially violated Section 2.5 of the Agreement by selling products competitive with MPS products without MPS approval during the term of the Agreement.

29. Mel Foster materially breached Section 2.5 of the Agreement by representing the following lines that it did not disclose on Exhibit E to the Agreement: (a) ATS Advanced Thermal Solutions; (b) GAN Systems; (c) GSI Technology; (d) ISSI; (e) Luminus; (f) Nuvoton; and (g) Telink.  A true and correct copy of the Mel Foster line card (as of June 2, 2023) as published on its website is attached as Exhibit 2 and incorporated herein by reference.  Under Section 2.5 of the Agreement, MPS had the right to terminate it immediately.

30. Mel Foster materially breached Section 2.6(iii) of the Agreement by failing to notify MPS of Defendant's sales meetings and provide MPS personnel adequate opportunity to provide sales and promotion information in such meetings.

31. Based upon the foregoing material breaches by Mel Foster, MPS was entitled to terminate the Agreement, with immediate effect, pursuant to Section 10.2.

32. Upon information and belief, the material breaches set forth above were not curable, and there is nothing Mel Foster could have done to remedy its prior material breaches.

**MPS's Termination of the Agreement**

33. On June 29, 2023, MPS provided written notice to Mel Foster that it was terminating the Agreement effective August 1, 2023.

34. MPS's termination notice was valid, effective, and authorized by Section 10.2 of the Agreement, which allows either party to terminate the Agreement, at any time during the term of the Agreement with or without cause, by written notice given to the other party not less than thirty (30) days prior to the effective date of such termination.

35. MPS's termination notice was valid, effective, and authorized by Section 2.5 of the Agreement, which allowed MPS to terminate the Agreement immediately due to Mel Foster's failure to inform MPS, and obtain approval, before representing competitive lines.

36. MPS's termination notice was valid, effective, and authorized by Section 10.2 of the Agreement, which allowed MPS to terminate the Agreement immediately due to Mel Foster's material breaches of the Agreement.

37. For the avoidance of doubt, if the Agreement remains in effect, by operation of law or otherwise, MPS hereby notifies Mel Foster that it does not intend to renew the Agreement following the expiration of its term on January 1, 2024.

**Mel Foster's Post-Termination Material Breaches**

38. Upon information and belief, Mel Foster failed to return to MPS all marketing and technical information concerning MPS Products, catalogs, sales aids, and all other materials supplied by MPS for Mel Foster's use in connection with the Agreement, in good and usable condition, as required by Sections 3.2 and Section 10.5(iii) of the Agreement.

39. Upon information and belief, Mel Foster has failed to assist in the transition of the customers, as required by Section 10.5(iv) of the Agreement, and to the contrary, has continued to hold itself out as MPS's authorized sales representative.

40. Mel Foster is in material breach of Section 9.3 of the Agreement, by continuing to use MPS's name and logo without its consent, which are protected trademarks owned by MPS.

41. Plaintiff is the lawful owner of an incontestable trademark for the word mark MPS registered at the U.S. Patent and Trademark Office, Registration Number 3121578, registered on July 25, 2006, with a date of first use at least as early as September 1997.

42. Plaintiff is the lawful owner of an incontestable trademark for MONOLITHIC POWER SYSTEMS registered at the U.S. Patent and Trademark Office, Registration Number 3127654, registered on August 8, 2006, with a date of first use at least as early as September 1997.

43. Plaintiff is the lawful owner of a trademark in the MPS stylized logo **mPS** pending at the U.S. Patent and Trademark Office, Serial Number 97484411, filed on June 30, 2022, with a date of first use at least as early as June 2018.

44. By virtue of using MPS's name, logo, and trademarks, without MPS's consent, following the date of termination, MPS is violating Mel Foster's trademark rights.

### Mel Foster's Demand Letter

45. On or about August 4, 2023, Mel Foster's attorney sent MPS a letter (the **"Demand Letter"**) alleging that: (a) the Agreement is governed by the Minnesota Termination of Sales Representatives Act, Minn. Stat. § 325E.37 (the **"MTSRA"**); (b) MPS violated the MTSRA by terminating the Agreement in accordance with its terms; (c) MPS's termination of the Agreement is null and void; (d) Mel Foster is entitled to damages and remedies under the MTSRA; and (e) MPS is indebted to Mel Foster for earned but unpaid commissions with respect to alleged sales to Hewlett Packard Enterprise and other unidentified customers.

46. MPS disputes the allegations contained in the Demand Letter and contends that: (a) the Agreement is not governed by the MTSRA; (b) MPS did not violate the MTSRA by terminating the Agreement in accordance with its terms; (c) MPS's termination of the Agreement is valid and effective; (d) Mel Foster is not entitled to damages and remedies under the MTSRA; and (e) MPS is not indebted to Mel Foster for commissions with respect to alleged sales to Hewlett Packard Enterprise or other customers, with the exception of commissions for recent sales through the date of termination which MPS intends to pay to Mel Foster in accordance with the terms of the Agreement.

### COUNT I. BREACH OF CONTRACT

47. Plaintiff realleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

48. The parties entered into the Agreement by their mutual assent.

49. The Agreement is supported by consideration.

50. Defendant breached the Agreement as set forth herein.

51. Plaintiff has suffered damages proximately caused by Defendant's breach of contract, including but not limited to, lost sales, profits, damage to Plaintiff's goodwill, and other compensatory damages, in an amount greater than $75,000 to be determined with specificity at trial.

52. Plaintiff is entitled to recover from Defendant its reasonable attorney's fees and costs pursuant to Section 11.7 of the Agreement.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT II.  **DECLARATORY JUDGMENT**

53. Plaintiff realleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

54. The declaratory relief sought by Plaintiff in this action is authorized by, under, and pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201, *et seq*.

55. This matter involves a genuine and justiciable controversy arising out of the conflicting claims of the parties with regard to the respective rights of Plaintiff and Defendant.

56. A declaratory judgment determining the respective rights of the parties would serve the useful purpose of clarifying the legal relationship between Plaintiff and Defendant and would settle the controversy between them.

57. The Court should declare as follows and make such other declarations as are appropriate and authorized under the Declaratory Judgments Act:

    (a) That the laws of the State of California (and not Minnesota), apply to the Agreement and all claims related to the Agreement and/or its termination, pursuant to the express terms of the Agreement and applicable law;

    (b) That the Minnesota Termination of Sales Representatives Act, Minn. Stat. § 325E.37, does not apply to the parties, the Agreement, or Plaintiff's termination of the Agreement;

    (c) That Defendant is equitably estopped and barred from claiming that Minnesota law, not California law, applies to the Agreement;

(d) That Plaintiff's termination of the Agreement was lawful and in accordance with the contractual terms entered into by the parties;

(e) That Plaintiff's termination of the Agreement was lawful, even if the MTSRA applies, because Plaintiff had "good cause" to terminate the Agreement;

(f) That Defendant has waived all claims for commissions or damages arising from the termination of the Agreement, pursuant to Section 10.6 of the Agreement;

(g) That Plaintiff does not owe Defendant any further commissions for sales to Hewlett Packard Enterprise; and

(h) That Plaintiff has paid Defendant all commissions owed in accordance with the terms of the Agreement.

58. The Court should enjoin Defendant from commencing or maintaining any action against Plaintiff pursuant to the MTSRA, Minn. Stat. § 325E.37, in the State of Minnesota or elsewhere (including any litigation and/or arbitration) as the parties expressly agreed that the laws of the State of California would apply to the Agreement.

59. Plaintiff is entitled to recover from Defendant its reasonable attorney's fees and costs seeking this declaratory judgment pursuant to Section 11.7 of the Agreement.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT III.  VIOLATIONS OF 15 U.S.C. § 1125(a)(1)(A) (LANHAM ACT)**

60. Plaintiff realleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

61. Plaintiff is the lawful owner of trademarks and character marks in its name and logo that have been registered with the U.S. Patent and Trademark Office.

62. 15 U.S.C. § 1125(a)(1)(A) provides that any individual or entity who makes a false or misleading representation of fact that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person" shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

-10-

63.     Upon information and belief, Defendant, has made false or misleading representations of fact that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, including but not limited to, representing that Defendant is authorized to sell Plaintiff's products after August 1, 2023 and utilizing Plaintiff's name and logo on Defendant's website after August 1, 2023.

64.     Plaintiff has the sole right to protection and exclusive use of its name and logo.

65.     Plaintiff has suffered damages proximately caused by trademark infringement, including but not limited to, lost sales, profits, damage to Plaintiff's goodwill, and other compensatory damages, in an amount greater than $75,000 to be determined with specificity at trial.

66.     Under the Lanham Act, Plaintiff is entitled to an injunction preventing Defendant from continuing to hold itself out as affiliated, connected, or associated with Plaintiff.

67.     As a result of Defendant's wrongful conduct, Plaintiff has been, is now, and will be irreparably injured, and unless Defendant is enjoined by the Court, Plaintiff will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

68.     On information and belief, Defendant has acted willfully to usurp Plaintiff's rights, and should be held liable for treble damages and attorney's fees pursuant to 15 U.S.C. § 1117(a) and Defendant's profits due to the infringement.

WHEREFORE, Plaintiff prays for relief as set forth below.

### COUNT IV.  COMMON LAW TRADEMARK INFRINGEMENT

69.     Plaintiff realleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

70.     Defendant's acts constitute common law trademark and unfair competition, and have created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Plaintiff.  Plaintiff has no adequate remedy at law for this injury and is therefore entitled to injunctive relief preventing Defendant from continuing to hold itself out as affiliated, connected, or associated with Plaintiff.

71. On information and belief, Defendant acted with full knowledge of Plaintiff's use of, and statutory and common law rights to, Plaintiff's logo and name and without regard to the likelihood of confusion of the public created by Defendant's activities.

72. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's trademarks in its logo and name to the great and irreparable injury of Plaintiff.

73. Plaintiff has suffered damages proximately caused by Defendant's trademark infringement, including but not limited to, lost sales, profits, damage to Plaintiff's goodwill, and other compensatory damages, in an amount greater than $75,000 to be determined with specificity at trial. Furthermore, in light of Defendant's deliberate and malicious use of Plaintiff's logo and name, and the need to deter Defendant from engaging in similar conduct in the future, Plaintiff additionally is entitled to punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT V.  UNFAIR AND UNLAWFUL BUSINESS PRACTICES UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *et seq*.**

74. Plaintiff realleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

75. Defendant's above-referenced acts constitute unlawful, unfair, and fraudulent business practices, as well as unfair, deceptive, untrue, and misleading advertising, as well as competition, and false designation of origin in violation of Cal. Bus. & Prof. Code § 17200, *et seq*.

76. Plaintiff has suffered damages proximately caused by Defendant's trademark infringement, including but not limited to, lost sales, profits, damage to Plaintiff's goodwill, and other compensatory damages, in an amount greater than $75,000 to be determined with specificity at trial.

77. As a result of Defendant's unlawful, unfair, and fraudulent business practices, Defendant has been or will be unjustly enriched in an amount to be proven at trial, for which Plaintiff seeks restitution.

78. As a result of Defendant's actions described herein, Plaintiff has suffered and will continue to suffer substantial damage to its business, reputation and goodwill and a significant threat to competition.

79. The aforesaid conduct, for which there is no complete adequate remedy at law, is irreparable, continuing in nature, and will continue unless properly enjoined.

80. As a result of the aforesaid conduct, Plaintiff is entitled to injunctive relief under Cal. Bus. & Prof. Code § 17203.

81. As a result of the aforesaid conduct, Plaintiff is entitled to recover its attorney's fees and costs under Section 11.7 of the Agreement and Cal. Code Civ. Proc. § 1021.5.

WHEREFORE, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in favor of Plaintiff and against Defendant for all compensatory, incidental, special, consequential, statutory, and punitive damages that may be recoverable, in an amount to be proven with specificity at trial;

B. Enter a declaratory judgment as set forth herein;

C. Grant Plaintiff temporary, preliminary, and permanent injunctive relief to: (i) prevent Defendant's threatened, anticipatory, and future violation of Plaintiff's rights; (ii) enjoin Defendant from commencing or maintaining any action against Plaintiff pursuant to the MTSRA, Minn. Stat. § 325E.37, in the State of Minnesota or elsewhere (including any litigation and/or arbitration); and (iii) enjoin Defendant from using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendant's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to, any of Plaintiff's trademarks, trade dresses, names, or logos;

D. Award Plaintiff its costs and disbursements herein, including reasonable attorney's fees, court costs, witness fees, and expenses pursuant to Section 11.7 of the Agreement, 15 U.S.C. § 1117(a), Cal. Code Civ. Proc. § 1021.5, and other applicable law;

E. Award Plaintiff pre-judgment interest in the maximum amount allowable by law; and

F. Award such other and further relief as the Court deems just and equitable.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED:  August 29, 2023 | **PERKINS COIE LLP** |
| 3 | | By: */s/ John D. Esterhay* |
| 4 | | John P. Schnurer, Bar No. 185725<br>JSchnurer@perkinscoie.com |
| 5 | | John D. Esterhay, Bar No. 282330<br>JEsterhay@perkinscoie.com |
| 6 | | 11452 El Camino Real, Suite 300<br>San Diego, CA  92130-2080 |
| 7 | | Telephone:  858.720.5700<br>Facsimile:  858.720.5799 |

**TREPANIER MACGILLIS BATTINA**

Craig W. Trepanier
(*Pro Hac Vice* to be Filed)
craig@trepanierlaw.com
8000 Flour Exchange Building
310 Fourth Avenue South
Minneapolis, MN 55415
Telephone: 612.455.0502
Facsimile: 612.455.0501

Attorneys for Plaintiff
Monolithic Power Systems, Inc.

-14-

COMPLAINT
CASE NO. 5:23-cv-04455